1
2
3
4
5
6
7
8                    **IN THE UNITED STATES DISTRICT COURT**

9                   **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    STEVE WILHELM,                          No.  2:20-CV-1682-WBS-DMC-P

12                  Plaintiff,

13           v.                               FINDINGS AND RECOMMENDATIONS

14    SANDAR AUNG,

15                  Defendant.

16

17           Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18    42 U.S.C. § 1983.  Pending before the Court is Defendant Aung's unopposed motion for

19    summary judgment, ECF No. 25.  Plaintiff's single claim alleges that Defendant Aung was

20    deliberately indifferent to Plaintiff's serious medical needs.  See ECF No. 1, pg. 4.  Defendant

21    Aung contends that she was not deliberately indifferent to Plaintiff's serious medical needs and

22    that she is entitled to qualified immunity.  See ECF No. 25, pgs. 10, 12.

23

24                               **I. BACKGROUND**

25           This action proceeds on Plaintiff's original complaint.  See ECF No. 1.  Plaintiff,

26    Steve Wilhelm, named Drs. Aung and Vaughn as defendants.  See id.  Defendant Vaughn has

27    been dismissed from the action.  See ECF No. 20 (District Judge order adopting findings and

28    recommendations, ECF No. 13).  Plaintiff alleges that his Eighth Amendment rights were violated

                                          1

1    by Defendant Aung.  See ECF No. 1, pg. 4.

2                On November 3, 2020, the Court issued an order addressing Plaintiff's complaint.

3    See ECF No. 9.  The Court summarized Plaintiff's allegations as follows:

4                Plaintiff is a 70-year-old prisoner incarcerated at Mule
     Creek State Prison ("MCSP"). ECF No. 1 at 1. Defendants, Dr. Sandar
5    Aung and Dr. W. Vaughn, are medical doctors at MCSP. Id. at 2. Plaintiff
     alleges that Dr. Aung and Dr. Vaughn showed deliberate indifference to
6    his serious medical needs in violation of the Eighth Amendment to the
     United States Constitution. Id. at 3–5.
7                Plaintiff contends that he had several medical appointments
     with Dr. Aung from May 2018 to December 2019, all of which primarily
8    concerned foot pain. Id. at 3. At each appointment, Plaintiff complained of
     foot pain brought on by ill-fitting, state-issued boots that he was required
9    to wear to work in MCSP's vocational programs. Id. Plaintiff complained
     to Dr. Aung that the inadequate boots were two sizes too wide, caused
10   painful lumps on his heels, and exacerbated underlying degenerative
     disease of the spine and arthritis in his back. Id. at 4. Dr. Aung denied
11   Plaintiff's written request to see a podiatrist. Id. And although Dr. Aung
     scheduled Plaintiff an appointment with a podiatrist after Plaintiff
12   complained of foot problems to a prison nurse, Dr. Aung subsequently
     cancelled the appointment and would only prescribe pain medication that
13   did not resolve Plaintiff's condition. Id. at 3–4.
                 Dr. Aung, on multiple occasions, recommended that
14   Plaintiff buy lifts or soft shoes from the inmate package catalogue. Id. But
     Plaintiff always explained to her that lifts are not available for purchase in
15   the catalogue and that he could not wear soft shoes because he was
     required to wear boots to continue working his assignments to MCSP's
16   welding and maintenance vocational programs. Id. Because of Dr. Aung's
     failure to schedule Plaintiff an appointment with a podiatrist or adequately
17   address his foot pain, Plaintiff dropped out of the welding and
     maintenance programs because both required him to stand on his feet all
18   day and he could not tolerate the pain. Id. Plaintiff's foot pain accordingly
     went unresolved and he contends that Dr. Aung was deliberately
19   indifferent by ignoring his serious and enduring medical condition. Id.
                 Plaintiff further alleges that Dr. Vaughn, MCSP's Chief
20   Physician and Surgeon, also exhibited deliberate indifference to Plaintiff's
     serious medical need by denying Plaintiff's medical appeal of Dr. Aung's
21   decisions. Id.

22   ECF No. 9, pgs. 2-3.

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

                                            2

1

**II. DEFENDANT'S EVIDENCE**

2              Defendant's motion is supported by a sworn declaration from Defendant S. Aung.

3  See ECF No. 25-1.   Defendant also relies on the following exhibits attached to the declaration of

4  Defendant S. Aung:

5

6                              Exhibit A        Dr. Aung's October 16, 2018, Progress Notes.  ECF
                                                No. 25-1, pgs. 4-6.

7                              Exhibit B        Dr. Aung's October 16, 2018, Order for X-Rays
                                                both feet.  ECF No. 25-1, pgs. 7-8.

8

9                              Exhibit C        November 7, 2018, Diagnostic Radiology Report.
                                                ECF No. 25-1, pgs. 9-10.

10                             Exhibit D        California Department of Corrections and
                                                Rehabilitation's (CDCR) Guidelines Related to
11                                              Treatment for Achilles Tendinosis.  ECF No. 25-1,
                                                pgs. 11-12.
12
                               Exhibit E        CDCR's Guidelines Related to Treatment for Bone
13                                              Spurs.  ECF No. 25-1, pgs. 13-14.

14                             Exhibit F        CDCR's Guidelines Related to Podiatry Referrals.
                                                ECF No. 25-1, pgs. 15-16.
15
                               Exhibit G        CDCR's Guidelines Related to Therapeutic Shoes.
16                                              ECF No. 25-1, pgs. 17-19.

17                             Exhibit H        Dr. Aung's August 1, 2019, Order for X-Ray of Mr.
                                                Wilhelm's Left Foot.  ECF No. 25-1, pgs. 20-21.
18
                               Exhibit I        Dr. B. Brown's September 10, 2019, Progress Notes
19                                              from Mr. Wilhelm's Medical Records.  ECF No. 25-
                                                1, pgs. 22-23.
20
                               Exhibit J        Pain Report Section of Mr. Wilhelm's Medical
21                                              Records.  ECF No. 25-1, pgs. 24-30.

22              Additionally, Defendant Aung includes a request for judicial notice in support of

23  her motion for summary judgment.  See ECF No. 25-3.  Attached to Defendant's request for

24  judicial notice is Exhibit A:  "Amended Abstract of Judgment in People v. Steven Hairl Wilhelm,

25  Fresno County Superior Court case number 0610374-1.  See id.

26  / / /

27  / / /

28  / / /

3

1        Further, Defendant Aung properly includes a Statement of Undisputed Facts

2   alongside her motion for summary judgment in which she states the following facts are

3   undisputed:

4           1.      Plaintiff Steve Wilhelm is serving a cumulative sentence of
            25 years to life following his 1997 convictions for multiple sex
5           offenses committed against five children aged two to five years old.

6           2.      Plaintiff is a 71-year old [sic] inmate with several chronic
            medical conditions including but not limited to degenerative joint
7           disease in his lumbar spine and kidney disease.

8           3.      Dr. Aung saw Plaintiff on October 16, 2018, for a complaint
            of burning pain in the back of his legs, along the Achilles [sic]
9           tendon, just above the heel.  Plaintiff reported that the pain started
            approximately six months before although there was no previous
10          trauma to the area.  Dr. Aung noted no swelling, no ulceration, no
            fungal infection, and pulsation was normal.  She also observed a
11          small boney swelling above the heel, at the base of the Achilles
            tendon but no signs of tendon rupture.
12
            4.      Dr. Aung instructed Plaintiff to do exercises to strengthen his
13          calf muscles, [sic] and recommended that he use ice packs and
            topical capsaicin cream to mitigate discomfort.  She also suggested
14          that he stop wearing hard shoes.

15          5.      Dr. Aung determined that Plaintiff's issue was probably
            Achilles [sic] tendinitis/tendinopathy, and she ordered x-rays of both
16          feet.

17          6.      The November 7, 2018 [sic] x-rays showed small spurs at the
            insertion of the Achilles tendon on both feet.  There was no evidence
18          of fracture or dislocations, and the joint spaces were preserved.  Bone
            mineralization was normal, and there was no significant tissue
19          swelling.   The treatment recommendation was for Tylenol and
            capsaicin cream, an x-ray recheck for comparison, and a podiatry
20          referral if needed.

21          7.      Neither Achilles tendinosis nor bone spurs pose a serious risk
            of harm to a person's health, and CDCR Guidelines call for
22          conservative treatments such as NSAIDs, weight control, and soft
            shoes for those conditions.
23
            8.      Plaintiff's condition did not meet the criteria for a podiatry
24          referral or therapeutic shoes under CDCR's Guidelines.

25          9.      Dr. Aung saw Plaintiff again on August 1, 2019, and ordered
            another x-ray of his left foot to determine what, if any, changes
26          occurred over the previous year.

27          10.     The September 10, 2019 [sic] x-rays showed no significant
            changes from the November 7, 2018 [sic] x-rays.
28

4

11.     With the exception of one appointment on August 1, 2019,
Plaintiff's records show "no actual or suspected pain" or very low
intermittent pain during medical appointments between February 23,
2018 [sic] and May 26, 2020.

ECF No. 25-4.

Plaintiff has not opposed Defendant's motion nor disputed any of Defendant's facts.

## III. STANDARD FOR SUMMARY JUDGEMENT

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  The standard for summary judgment and summary adjudication is the same.  See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of
> the basis for its motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file, together
> with the affidavits, if any," which it believes demonstrate the absence of a
> genuine issue of material fact.

Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The

opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

/ / /

/ / /

/ / /

/ / /

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# IV. DISUCSSION

Defendant Aung argues that she was not deliberately indifferent to Plaintiff's medical needs.  See ECF No. 25, pg. 10.  Defendant further argues that she applied her medical expertise and training and followed CDCR Guidelines for treating Plaintiff's conditions; therefore, she should be entitled to qualified immunity.  See id. at 13.

### A. **Medical Needs**

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment.   See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency."  Estelle v. Gamble, 429 U.S. 97, 102 (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety."  Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind."  See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental health needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982), abrogated on other grounds by Sandin v. Conner, 515 U.S. 472 (1995).  An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc); see

1  also <u>Doty v. County of Lassen</u>, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness

2  are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2)

3  whether the condition significantly impacts the prisoner's daily activities; and (3) whether the

4  condition is chronic and accompanied by substantial pain. <u>See</u> <u>Lopez v. Smith</u>, 203 F.3d 1122,

5  1131-32 (9th Cir. 2000) (en banc).

6         The requirement of deliberate indifference is less stringent in medical needs cases

7  than in other Eighth Amendment contexts because the responsibility to provide inmates with

8  medical care does not generally conflict with competing penological concerns. <u>See</u> <u>McGuckin</u>,

9  974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to

10  decisions concerning medical needs. <u>See</u> <u>Hunt v. Dental Dep't</u>, 865 F.2d 198, 200 (9th Cir.

11  1989). The complete denial of medical attention may constitute deliberate indifference. <u>See</u>

12  <u>Toussaint v. McCarthy</u>, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical

13  treatment, or interference with medical treatment, may also constitute deliberate indifference. <u>See</u>

14  <u>Lopez</u>, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate

15  that the delay led to further injury. <u>See</u> <u>McGuckin</u>, 974 F.2d at 1060.

16         Negligence in diagnosing or treating a medical condition does not, however, give

17  rise to a claim under the Eighth Amendment. <u>See</u> <u>Estelle</u>, 429 U.S. at 106. Moreover, a

18  difference of opinion between the prisoner and medical providers concerning the appropriate

19  course of treatment does not give rise to an Eighth Amendment claim. <u>See</u> <u>Jackson v. McIntosh</u>,

20  90 F.3d 330, 332 (9th Cir. 1996).

21         Here, Defendant has showed that Defendant determined that Plaintiff did not meet

22  the criteria for a podiatry referral and that Defendant appropriately treated Plaintiff's Achilles'

23  tendinosis and bone spurs. <u>See</u> ECF No. 25-4, pgs. 2-3. Defendant instructed Plaintiff to do

24  some exercises, use ice, stop wearing hard shoes, and apply cream. <u>See</u> <u>id.</u> at 2. It does not

25  appear that Defendant was even negligent in her treatment of Plaintiff, least of all deliberately

26  indifferent. There is nothing indicating Defendant acted wantonly to inflict harm. Therefore,

27  judgment should be in favor of Defendant.

28  / / /

8

1          **B.    Qualified Immunity**

2          Government officials enjoy qualified immunity from civil damages unless their

3    conduct violates "clearly established statutory or constitutional rights of which a reasonable

4    person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In general,

5    qualified immunity protects "all but the plainly incompetent or those who knowingly violate the

6    law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  In ruling upon the issue of qualified

7    immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the

8    injury, the facts alleged show the defendant's conduct violated a constitutional right.  See Saucier

9    v. Katz, 533 U.S. 194, 201 (2001).  If a violation can be made out, the next step is to ask whether

10   the right was clearly established.  See id.  This inquiry "must be undertaken in light of the specific

11   context of the case, not as a broad general proposition . . . ."  Id.  "[T]he right the official is

12   alleged to have violated must have been 'clearly established' in a more particularized, and hence

13   more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable

14   official would understand that what he is doing violates that right."  Id. at 202 (citation omitted).

15   Thus, the final step in the analysis is to determine whether a reasonable officer in similar

16   circumstances would have thought his conduct violated the alleged right.  See id. at 205.

17          When identifying the right allegedly violated, the court must define the right more

18   narrowly than the constitutional provision guaranteeing the right, but more broadly than the

19   factual circumstances surrounding the alleged violation.  See Kelly v. Borg, 60 F.3d 664, 667 (9th

20   Cir. 1995).  For a right to be clearly established, "[t]he contours of the right must be sufficiently

21   clear that a reasonable official would understand [that] what [the official] is doing violates the

22   right."  See Anderson v. Creighton, 483 U.S. 635, 640 (1987).  Ordinarily, once the court

23   concludes that a right was clearly established, an officer is not entitled to qualified immunity

24   because a reasonably competent public official is charged with knowing the law governing his

25   conduct.  See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982).  However, even if the plaintiff

26   has alleged a violation of a clearly established right, the government official is entitled to

27   qualified immunity if he could have ". . . reasonably but mistakenly believed that his . . . conduct

28   did not violate the right."  Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001); see

1 | also <u>Saucier</u>, 533 U.S. at 205.

2 |       The first factors in the qualified immunity analysis involve purely legal questions.

3 | <u>See</u> <u>Trevino v. Gates</u>, 99 F.3d 911, 917 (9th Cir. 1996).  The third inquiry involves a legal

4 | determination based on a prior factual finding as to the reasonableness of the government

5 | official's conduct.  <u>See</u> <u>Neely v. Feinstein</u>, 50 F.3d 1502, 1509 (9th Cir. 1995).  The district court

6 | has discretion to determine which of the <u>Saucier</u> factors to analyze first.  <u>See</u> <u>Pearson v. Callahan</u>,

7 | 555 U.S. 223, 236 (2009).  In resolving these issues, the court must view the evidence in the light

8 | most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff.  <u>See</u>

9 | <u>Martinez v. Stanford</u>, 323 F.3d 1178, 1184 (9th Cir. 2003).

10 |       Qualified immunity shields government officials who, in the face of clearly

11 | established law, acted reasonably but nonetheless violated some constitutional right.  As

12 | discussed above, the undisputed evidence shows the Defendant did not violate Plaintiff's rights.

13 | Therefore, qualified immunity is not an issue in this case.  And even if the Court concluded the

14 | Defendant did violate a clearly established right, she would be entitled to qualified immunity

15 | because the undisputed evidence shows that the Defendant acted reasonably by appropriately

16 | treating Plaintiff's medical concerns within the CDCR guidelines.  <u>See</u> ECF No. 25-4, pg. 3.

17 | / / /

18 | / / /

19 | / / /

20 | / / /

21 | / / /

22 | / / /

23 | / / /

24 | / / /

25 | / / /

26 | / / /

27 | / / /

28 | / / /

10

1

**V. CONCLUSION**

2

Based on the foregoing, the undersigned recommends that:

3

1.      Defendant Aung's unopposed motion for summary judgment, ECF No. 25,

4

be granted;

5

2.      Plaintiff's motion, ECF No. 34, to reschedule a settlement conference is

6

denied as moot; and

7

3.      Judgment be entered as a matter of law in favor of Defendant Aung.

8

4.      All pending motions shall be dismissed as moot (ECF No. 34).

9

These findings and recommendations are submitted to the United States District

10

Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within 14 days

11

after being served with these findings and recommendations, any party may file written objections

12

with the court.  Responses to objections shall be filed within 14 days after service of objections.

13

Failure to file objections within the specified time may waive the right to appeal.  See Martinez v.

14

Y1st, 951 F.2d 1153 (9th Cir. 1991).

15

16

Dated:  December 13, 2021

17

_____

18

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28